UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

KENNETH T. CAMPBELL,                    )
                                        )
                    Movant,             )
                                        )
        vs.                             )        Case No. 1:10CV000105 SNLJ
                                        )
UNITED STATES OF AMERICA,               )
                                        )
                    Respondent.         )

**<u>MEMORANDUM AND ORDER</u>**

This case is a motion under 28 U.S.C. § 2255 to vacate, set aside or correct sentence by

Kenneth T. Campbell, a person in federal custody.  On May 28, 2009, Campbell plead guilty

before this Court to the offense of possession with intent to distribute a substance containing five

grams or more cocaine base, and on August 17, 2009, this Court sentenced Campbell to the

Bureau of Prisons for a term of 188 months, the low end of the Sentencing Guidelines range.

Campbell's § 2255 action, which is based on several allegations of ineffective assistance of

counsel, is fully briefed and ripe for disposition.

I.       FACTS AND PROCEDURAL BACKGROUND

On August 15, 2007, Kenneth T. Campbell was a passenger in a vehicle that displayed an

improper license plate. After observing police in the area, the driver of the car parked and both

Campbell and the driver walked away from the vehicle. Police officers utilized a canine to

conduct an exterior sniff of the vehicle. The canine alerted to the presence of controlled

substances on the front passenger side door, which is where Campbell had been seated. Once the

officers searched the vehicle, they seized suspected cocaine base from the center console. The

substance was analyzed by a forensic chemist who determined that the substance was in fact

cocaine base, also known as "crack" cocaine, weighing 21.32 grams. That quantity, 21.32 grams of "crack" cocaine, is consistent with possessing the drug with the intent to distribute.

A DNA profile was developed from the plastic bag containing the 21.32 grams of cocaine base and compared to a sample of Campbell's DNA. According to a Criminalist at the Missouri State Highway Patrol Crime Laboratory Division, the DNA profile taken from the plastic bag was found to be consistent with Campbell's DNA. The approximate frequency of such a match is only one in 2.05 quintillion in the Black population. Campbell admitted that he placed the cocaine base in the center console for the driver with the knowledge that the cocaine base would be distributed to other persons.

On December 11, 2008, Campbell was indicted by a grand jury based on the aforementioned conduct. His initial appearance in federal court was on February 27, 2009. Campbell waived pre-trial motions on May 15, 2009 in open court, his attorney having previously filed a written waiver.

On May 28, 2009, Campbell pled guilty to possessing 21.32 grams of cocaine base as charged in the Indictment in case number 1:08CR158SNLJ. Pursuant to the Plea Agreement Campbell agreed to plead guilty to the charge in the single count Indictment. (Plea Stip, ¶2.A) The parties recommended that the base offense level under U.S.S.G. §2D1.1(c) was 26, however, noted that "[i]n the event the defendant is found to be a career offender, the parties recommend that the base offense level is 34 as found in Section 4B1.1(b)(A)." (Plea Stip, ¶3.B.(1)) The parties recommended that Campbell should receive a three level decrease for acceptance of responsibility. (Plea Stip, ¶3.D) The parties left the determination of Campbell's criminal history category to the District Court. (Plea Stip, ¶3.F.) Campbell admitted that he had one prior

felony controlled substance conviction. (Plea Stip, ¶4)

Following the plea, a Presentence Investigation Report (PSR) was prepared by United States Probation Officer Sherry L. Persinger-Miller. Officer Miller recommended that Campbell met the requirements for application of the career offender provision, U.S.S.G. §4B1.1 (PSR, ¶24), and thus the total offense level, after consideration of a three level deduction for acceptance of responsibility, was 31 (PSR, ¶25).

Campbell's criminal history calculation revealed fourteen (14) criminal history points, which established a criminal history category VI. (PSR, ¶71) Campbell's status as a career offender also supported that his criminal history category should be VI. *Id*.

The two convictions that qualified Campbell as a career offender arose from two separate cases--Sale of a Controlled Substance (cocaine base) in Cape Girardeau County Circuit Court case number 05G9-CR01379-01 (PSR ¶55) and Resisting a Lawful Stop thereby Creating a Substantial Risk of Serious Physical Injury or Death to Other Persons in Cape Girardeau County Circuit Court case number 06G9-CR00388-01 (PSR ¶¶59 and 61). The conduct supporting Campbell's Resisting a Lawful Stop conviction was specifically stated in the Felony Information, as follows:

> on or about March 4, 2006. . .Ptlm. Wiedner, a law enforcement officer, was attempting to make a lawful stop of a vehicle being operated by [Campbell], and [Campbell] knew or reasonably should have known that the officer was making a lawful stop, and, for the purpose of preventing the officer from effecting the stop, resisted the stop of [Campbell] by fleeing from the officer and [Campbell] fled in such a manner that created a substantial risk of serious physical injury or death to other persons in that [Campbell] failed to stop at numerous stop signs, struck a patrol car that was occupied by a police officer and by driving completely off the roadway numerous times.

*See*, copy of Felony Information and Judgment for case number 06G9-CR00388-01, attached as

Government Exhibit #2. In the same case, Campbell was also charged with and pled guilty to Driving While Intoxicated. *Id*.

In addition, Campbell had several countable misdemeanor convictions, including: Domestic Assault Third Degree (PSR ¶63), Driving While Intoxicated (PSR ¶59), and three separate Driving While Suspended cases (PSR ¶¶47, 51, 59). Furthermore, Campbell had five driving related misdemeanor convictions, as well as one Resisting Arrest conviction for which no points were assessed. (PSR ¶¶28, 31, 34, 37, 40, 43) Finally, Campbell was on parole at the time of the instant offense and had been released from his latest term of imprisonment less than two years prior to the instant offense. (PSR, ¶¶69, 70)

Campbell ultimately did not object to the findings of fact contained in the Presentence Report (Sentencing Transcript at page 2, hereinafter, Sent. Tr. 2), although a Sentencing Memorandum (Document 37) was filed that clarified Campbell's position as to his involvement in the instant offense and the fact he should receive a total of three points for acceptance of responsibility. (Document 37 at pp. 1-2) The final copy of the PSR concluded that the applicable sentencing range was 188 to 235 months. (Sent. Tr. 3)

On August 17, 2009, this Court conducted a sentencing hearing in this case. During the hearing and within his sentencing memorandum, Campbell asked this Court to order a sentence of 120 months. (Sent. Tr. 5 and Document 37 at p. 3) Campbell's attorney, Assistant Federal Public Defender Michael Skrien, spoke on Campbell's behalf. Mr. Skrien requested that this Court consider "the wave of changes occurring right now with respect to sentencing, especially crack cocaine offenders," the possibility that the career offender provision may likely be changed, Campbell's youth and substantial family support, and the fact Campbell was cognizant

of his mistakes and "prepared to pay the price." (Sent. Tr. 4-5) Mr. Skrien then asked this Court

to order a sentence well below the applicable sentencing guidelines range, 120 months. (Sent.Tr.

5)

> On his own behalf, Campbell made the following statement:
> I would like to start by saying as far as like what Mike said, you know, I am 22
> years of age. I have a lot in front of me, you know, as far as I'm planning to get
> my GED within a short amount of time. I'm looking forward to getting a trade
> also, which is weld --into welding. But I just ask your Honor that you sentence
> me as light as possible and as fairly as possible because, you know, I -- I do have
> a lot of support and I feel that I'm not a threat to society.
>
> I feel like, you know, I'm not a career offender. Also because I look at my charge
> -- I look at my charge and it's like I'm being a career off of a prior controlled
> substance abuse and a resisting arrest which was a misdemeanor. And I feel, you
> know, I accept my responsibility for everything that I have done and I just ask you
> to give me the lightest sentence possible.

(Sent. Tr. 5-6) In response to Campbell's statement regarding the misdemeanor resisting arrest

conviction, this Court clarified that Campbell's **felony resisting a lawful stop** conviction, which

involved the defendant fleeing "in such a manner that created a substantial risk of serious

physical injury or death to other persons" was one of the qualifying predicates for application of

the career offender provision in Campbell's case, not the misdemeanor for Resisting Arrest.

(Sent. Tr. 7-8) (Emphasis added.) Campbell had both a felony Resisting a Lawful Stop

conviction (PSR ¶59), which qualified as a predicate violent felony for application of the career

offender provision, as well as a misdemeanor Resisting Arrest conviction (PSR ¶28; facts

supporting that case were that Campbell "fled on foot from a lawful detention by a police

officer," *id*.) for which he was not assessed any criminal history points and was not a predicate

violent felony. The second predicate conviction for application of the career offender provision

was Campbell's Sale of a Controlled Substance conviction. (PSR ¶¶24, 55)

The Government requested that the Court consider ordering a sentence at the low end of the applicable guidelines range (Sent. Tr. 3-4), based on a number of factors, including that Campbell: 1) aided and abetted another individual in the possession of 21.32 grams of cocaine base with the intent to distribute on June 3, 2008 (PSR, ¶9); 2) sold cocaine base to an undercover officer on a prior occasion (PSR, ¶57); 3) has been convicted of two countable felonies and five countable misdemeanors in a span of only three years (PSR, ¶¶47-63); had been released from custody roughly three and a half months before the commencement of the instant offense (PSR, ¶¶59, 70); and 5) was on parole in two separate cases at the time of the instant offense (PSR, ¶69). (Document 38 at 7)

This Court sentenced Campbell to a 188-month term of imprisonment, a sentence at the lowest end of the applicable guidelines range, and ordered that the sentence run concurrently to Campbell's state sentences. (Sent. Tr. 10-11)

Campbell did not file any appeal concerning his sentence or conviction.

On or about July 8, 2010, Campbell filed a Motion Under 28 U.S.C. §2255 to Vacate, Set Aside, or Correct Sentence. Within the motion, Campbell claims that he received ineffective assistance of counsel since his counsel did not argue against application of the career offender provision in his case. Campbell also alleges that his prior conviction for Resisting a Lawful Stop by Fleeing - Creating a Substantial Risk of Serious Injury/Death to any Person, was not a qualifying predicate conviction for application of the career offender provision based on an argument that it is not a "violent felony." Each of Campbell's claims will be addressed separately in the following sections.

As a preliminary note, Campbell's complaints appear to be based primarily on a

misunderstanding of the application of §851 and U.S.S.G. §4B1.1 in his case. It appears

Campbell does not understand that these two provisions are distinct, and that they operate

separate and apart from each other.

II. APPLICABLE LAW

A. Need for an Evidentiary Hearing and Burden of Proof

28 U.S.C.§2255 provides, in pertinent part:

> Unless the motion and the files and records of the case conclusively show that the prisoner is not entitled to relief, the court shall . . . grant a prompt hearing thereon.

Rule 4(b) of the Rules Governing Section 2255 Proceedings for the United States District Court

states:

> The motion, together with all the files, records, transcripts, and correspondence relating to the judgment under attack, shall be examined promptly by the judge to whom it is assigned. If it plainly appears from the fact of the motion and any annexed exhibits in the prior proceedings in the case that the movant is not entitled to relief in the district court, the judge shall make an order for its summary dismissal and cause the movant to be notified.

When a petition is brought under §2255, the petitioner bears the burden of establishing

the need for an evidentiary hearing. In determining whether petitioner is entitled to an

evidentiary hearing the court must take many of petitioner's factual averments as true, but the

court need not give weight to conclusory allegations, self interest and characterizations,

discredited inventions, or opprobrious epithets. *United States v. McGill*, 11 F.3d 223, 225 (1st

Cir. 1993). A hearing is unnecessary when a Section 2255 motion (1) is inadequate on its face,

or (2) although facially adequate is conclusively refuted as to the alleged facts by the files and

the records of the case. *Id*., at 225-6. See also *United States v. Robinson*, 64 F.3d 403 (8th Cir.

1995); *Engelen v. United States*, 68 F.3d 238, 240 (8th Cir. 1995).

When all the information necessary for the court to make a decision with regard to claims raised in a 2255 motion is included in the record, there is no need for an evidentiary hearing. *Rogers v. United States*, 1 F.3d 697, 699 (8th Cir. 1993). An evidentiary hearing is unnecessary where the files and records conclusively show petitioner is not entitled to relief. *United States v. Schmitz*, 887 F.2d 843, 844 (8th Cir. 1989); *Dall v. United States*, 957 F.2d 571, 573 (8th Cir. 1992).

## B. Ineffective Assistance of Counsel

To prevail on a claim alleging ineffective assistance of counsel, the movant must satisfy the two-part test of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984). Under *Strickland*, the movant must first show that the counsel's performance was deficient. 466 U.S. at 687. This requires the movant to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. Secondly, the movant must demonstrate that the deficient performance prejudiced the defense so as "to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*.

The Eighth Circuit has described the two-fold test as follows: (1) counsel's representation fell below an objective standard of reasonableness; and (2) but for this ineffective assistance, there is a reasonable probability that the outcome of the trial would have been different. *Rogers v. United States*, 1 F.3d 697, 700 (8th Cir. 1993). The Eighth Circuit has stated that when applying the *Strickland* test, the defendant must show that: (1) his counsel so grievously erred as to not function as the counsel guaranteed by the Sixth Amendment; and (2) his counsel's deficient performance prejudiced his defense. *Auman v. United States*, 67 F.3d 157, 162 (8th Cir. 1995) citing *Strickland*, 466 U.S. at 687. "If the answer to either question is 'no,' then we need

-8-

not address the other part of the test." *Fields v. United States*, 201 F.3d 1025, 1027 (8th Cir. 2000).

"Prejudice" requires a reasonable probability that the proceeding would have ended in a different result without counsel's errors. *York v. Lockhart*, 856 F.2d 61, 63 (8th Cir.1988). Counsel may afford ineffective assistance by failing to object at sentencing. See *United States v. Ford*, 918 F.2d 1343, 1350 (8th Cir.1990) (holding that defendant received ineffective assistance where counsel did not object to base offense level and Sentencing Commission had amended guidelines between preparation of the presentence report and sentencing).

When evaluating counsel's performance, the court "must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065. Counsel's performance is considered objectively, and gauged "whether it was reasonable 'under prevailing professional norms' and 'considering all the circumstances.'" *Fields*, 201 F.3d at 1027, quoting *Strickland,* 466 U.S. at 688, 104 S.Ct. at 2064-65. Counsel's challenged conduct is viewed as of the time of his representation. "And we avoid making judgments based on hindsight." *Fields*, 201 F.3d at 1027. A reviewing court's "scrutiny of counsel's performance must be highly deferential." *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065.

### C. Effect of Guilty Plea on Appealable Issues

A defendant who enters a plea of guilty thereby waives his right to request relief under 28 U.S.C. §2255 with the exception of those issues related to jurisdiction only. *See*, e.g., *Hill v. United States*, 928 F.2d 303 (8th Cir. 1991); *United States v. Stewart*, 972 F.2d 216, 217-18 (8th Cir. 1992); *Smith v. United States*, 876 F.2d 655, 657 (8th Cir. 1989).

When a guilty plea is delivered by the Movant, the focus of a collateral attack must remain limited to the nature of counsel's advice and the voluntariness of the plea. *Bass v. United States*, 739 F.2d 405, 406 (8th Cir. 1984) citing *Tollett v. Henderson*, 411 U.S. 258, 266, 93 S.Ct. 1602, 1607 (1973). A guilty plea operates as a break in the chain of events of the criminal process. *Tollett,* 411 U.S. at 267. Once a criminal defendant solemnly professes his guilt before the court, "he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *Id.* Only the voluntary and intelligent character of the guilty plea may be attacked. *Id.* Although the *Tollett* decision concerned state prisoner habeas corpus petitions, the Eighth Circuit adopted and applied its rationale to motions under Section 2255. *Bass*, 739 F.2d at 406.

Even a defendant's reliance on his counsel's opinion as to the calculation of defendant's sentence would not make a defendant's plea involuntary, where the record reveals that the defendant was fully informed and knowingly and voluntarily pleaded guilty. *See, Hollis v. United States*, 687 F.2d 257, 260 (8th Cir. 1982); *Roberson v. United States*, 901 F.2d 1475, 1478 (8th Cir. 1990).

D. Sentencing Guidelines Issues

Ordinarily challenges regarding Sentencing Guideline issues are not cognizable upon a §2255 motion. *See*, *Kitterman v. United States*, 904 F.Supp. 987, 992 (8th Cir. 1993), aff'd 16 F.3d 1229 (8th Cir. 1994. "Section 2255 claims may provide relief for cases in which the sentence was in excess of the maximum authorized by law."" 28 U.S. C. §2255; *see*, *United States v. Wilson*, 997 F.2d 429 (8th Cir. 1993). This provision, however, has been held to apply "to violations of statutes establishing maximum sentences, rather than garden-variety Sentencing

Guideline application issues." *Auman v. United States*, 67 F.3d 157, 161 (8th Cir. 1995).

Sentencing Guideline arguments do not fall under the §2255 provision for sentences in "excess

of the maximum authorized by law and should therefore be brought only on direct appeal."

*United States v. Wilson*, 997 F.2d at 431. As such, a Movant cannot raise issues regarding

Sentencing Guideline errors not raised upon direct appeal, unless the Movant can show both

cause for failure to raise the issue on direct appeal and actual prejudice resulting from the

failure. *Dyer v. United States*, 23 F.3d 1379 (8th Cir. 1994); *Thompson*, 7 F.3d at 1379; *Peltier

v. Henman*, 997 F.2d 461 (8th Cir. 1993).

III.    DISCUSSION

A.

Campbell complains that:

> counsel should have noted the government "could not have used the prior drug
> conviction under both 21 U.S.C. §851 and §4B1.1," for enhancement purposes.
> And by agreeing "not to file the §851" but backdooring the Petitioner with
> §4B1.1, wasn't much of a deal where; "if the 851 had been used", that would have
> placed Petitioner in a mandatory minimum sentence structure of 120 months. And
> the application under §4B1.1, based on the same prior would have been in
> applicable. Creating a reasonable probability, Petitioner's sentence would have
> leveled right there at 120 months, as opposed to 188 months.

(Campbell's §2255 Petition at 3) Based on this argument, Campbell claims that he "did not

receive any benefit for pleading guilty here based on counsel ineffective assistance." *Id*. at 4.

The weakness in Campbell's argument is that he is misinformed. The Plea Agreement conferred

a substantial benefit on Campbell, because had notice of Campbell's prior felony controlled

substance conviction been filed, he would have been exposed to a sentencing range of not less

than ten years and not more than life, which would have increased his base offense level under

-11-

the career offender provision from 34 to 37. *See*, U.S.S.G. §4B1.1(b)(A). An explanation of the extent of the benefit conferred on Campbell is explained through the following analysis of the applicable statutes and the career offender provision.

Title 21, United States Code, §841(b)(1)(B) provides:

any person [who violates this section] after a prior conviction for a felony drug offense has become final. . .shall be sentenced to a term of imprisonment which may not be less than 10 years and not more than life imprisonment. . ."

Under Title 21, United States Code, §802(44),

[t]he term "felony drug offense" means an offense that is punishable by imprisonment for more than one year under any law of the United States or of a State or foreign country that prohibits or restricts conduct relating to narcotic drugs, marihuana, anabolic steroids, or depressant or stimulant substances.

Title 21, United States Code, §851 is the provision that specifies the notice that United States Attorneys are required to file in order to "increase punishment by reason of one or more prior convictions." By not filing notice of the prior, the statutory penalty range in Campbell's case remained not less than five years and not more than forty years imprisonment, 21 U.S.C. §841(b)(1)(B), which allowed Campbell's career offender base offense level to be a 34, U.S.S.G. §4B1.1(b)(A), three levels lower than what would be required if the §851 notice had been filed. Had the prior been filed, Campbell's sentencing range after consideration for acceptance of responsibility would have been 262-327 months, which is much higher than the bargained for range of 188-235 months.

Campbell's argument appears to be that since the Government promised not to file notice of his prior felony controlled substance conviction, that conviction should not have been considered in determining whether or not the career offender provision applied. The problem for

Campbell is that irregardless of what promises the Government makes, or does not make, the

career offender provision applies, if:

> (1) the defendant is at least eighteen years old at the time the defendant committed
> the instant offense of conviction;

> (2) the instant offense of conviction is a felony that is either a crime of violence or
> a controlled substance offense; and

> (3) the defendant has at least two prior felony convictions of either a crime of
> violence or a controlled substance offense.

U.S.S.G. §4B1.1.

First, Campbell was twenty years old at the time of the offense charged in the Indictment.

Next, the charge to which Campbell pled guilty in federal court was a "controlled substance

offense," aiding and abetting possession of cocaine base with the intent to distribute. Finally,

Campbell's prior conviction for Resisting a Lawful Stop thereby Creating a Substantial Risk of

Serious Physical Injury or Death to Other Persons (PSR ¶¶59 and 61), is a "crime of violence"

(Sent. Tr. 8), while his Sale of Controlled Substance conviction, 05G9-CR01379-01 (PSR ¶55),

is a "controlled substance offense."

That Campbell was clearly aware of the likelihood that he would be determined to be a

career offender is obvious from the record. As a part of the written Plea Agreement that

Campbell entered into with the Government concerning the base offense level he agreed:

> In the event the defendant is found to be a career offender, the parties recommend
> that the base offense level is 34 as found in Section 4B1.1(b)(A).

(Plea Stip ¶ 3(B)(1))

In the section of the Plea Agreement that dealt with the total offense level, Campbell

also agreed that:

Based on these recommendations, the parties estimate that the Total Offense Level will be 24. The parties further agree to jointly recommend that a 92 month sentence be imposed by the District Court **unless the defendant is determined to be a career offender**. This joint recommendation is in exchange for the Government agreeing to refrain from filing a notice of enhancement pursuant to 21 U.S.C. §851 for the defendant's prior felony controlled substance conviction referenced on page ten of this Agreement. If filed, the prior conviction would enhance the defendant's statutory mandatory minimum term of imprisonment to 120 months and extend the minimum term of supervised release from four years to eight years.

However, **if the defendant is determined to be a career offender pursuant to Section 4B1.1(b)(A),** the parties estimate that the Total Offense Level is 31. In the event the defendant is found to be a career offender, the defendant may not request a sentence lower than 120 months and the Government may recommend that the District Court impose a sentence within the applicable guideline range as determined by the District Court.

(Plea Stip, ¶ 3E) (emphasis added).

Campbell plainly was aware of the possibility that he could be determined to be a career offender, and his counsel can in no wise be considered ineffective in that respect. Additionally, if the Government had filed notice of Campbell's prior felony controlled substance conviction pursuant to §851, Campbell's total offense level would have been three levels above a 34, and the sentencing range would have been much higher, 262-327 months, rather than 188-235 months. Based on this analysis, the Plea Agreement in this case conferred a substantial benefit on Campbell and his counsel was very effective.

B.

In his second point, Campbell claims that his counsel was ineffective, because "one of his predicates used pursuant to §4B1.1, is not a 'crime of violence.'" (Campbell's §2255 Petition at 4) Campbell argues that *Begay v. United States*, 128 S.t. 1581, 1586 (2008), "has altered the normal understanding of what constitutes crimes of violence for purposes of 18 U.S.C. §924(e)

and §4B1.1." (Campbell's §2255 Petition at 5) The problem with Campbell's analysis is that the cases he cited for the proposition that Resisting a Lawful Stop is not a violent felony are distinguishable from his case.

U.S.S.G. §4B1.2(a) defines "crime of violence" for purposes of the application of the career offender provision, as:

> any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that --
>
> (1) has an element the use, attempted use, or threatened use of physical force against the person of another, or
>
> (2) is burglary of a dwelling, arson, or extortion, involves the use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

According to Application Note 1 of §4B1.2:

> . . .Other offenses are included as "crimes of violence" if (A) that offense has as an element the use, attempted use, or threatened use of physical force against the person of another, or (B) the conduct set forth (i.e., expressly charged) in the count of which the defendant was convicted. . .by its nature, presented a serious potential risk of physical injury to another.

Prior to *Begay*, the Eighth Circuit held that Oregon's offense of felony fleeing was a crime of violence. *United States v. Kendrick*, 423 F.3d 803, 809 (8th Cir. 2005). The conduct required to commit that violation in Oregon involves fleeing, or attempting to elude a police officer while operating a motor vehicle after an identifiable police officer has given a visual or audible sign to stop. *Kendrick*, 423 F.3d at 809, citing O.R.S. §811.540. The Eighth Circuit noted:

> [u]nder the stress and urgency which will naturally attend his situation, [a person fleeing from law enforcement] will likely drive recklessly and turn any pursuit into a high-speed chase with the potential for serious harm to police or innocent

bystanders.

*Kendrick*, 423 F.3d at 809, citing *United States v. Sun Bear*, 307 F.3d 747, 753 (8th Cir. 2002).

Four years after *Kendrick* and one year after *Begay*, the Eighth Circuit held that a prior conviction for Minnesota's fleeing a police officer in a motor vehicle was not a "crime of violence" under the Sentencing Guidelines. *United States v. Tyler*, 580 F.3d 722 (8th Cir. 2009). The fleeing conviction in *Tyler*, however, is distinguishable from Campbell's Resisting a Lawful Stop conviction. The statute Tyler pled guilty to simply required that by means of a motor vehicle, he flee (increase speed, extinguish motor vehicle headlights or taillights, refuse to stop the vehicle, or use other means with intent to elude the officer), or attempt to flee a peace officer, when he knew or reasonably should have known the same to be a peace officer. *Tyler* held that since the Minnesota statute in question does not "typically involve (1) conduct presenting a serious risk of physical injury to another or (2) conduct that is violent and aggressive," it did not constitute a "crime of violence." *Tyler*, 580 F.3d at 726.

While the Eighth Circuit's decisions in *Kendrick* and *Tyler* appear to be contrary to each other, the *Tyler* panel noted that the pertinent statutes in each of the cases were different, the statute in *Kendrick* was from Oregon while the statute in *Tyler* was from Minnesota. *Tyler*, 580 F.3d at 726, fn.4. In addition, *Kendrick* was decided prior to *Begay*, which added an additional level of scrutiny for district courts in making a determination as to whether an unenumerated crime is a "crime of violence." *Id*.

The felony fleeing, or resisting a lawful stop statute in this case differs from both *Kendrick* and *Tyler*. Pursuant to §575.150. 1 of the Revised Statutes of Missouri:

A person commits the crime of resisting or interfering with arrest, detention, or

stop if, knowing that a law enforcement officer is making an arrest, or attempting to lawfully detain or stop an individual or vehicle, or the person reasonably should know that a law enforcement officer is making an arrest or attempting to lawfully detain or lawfully stop an individual or vehicle, for the purpose of preventing the officer from effecting the arrest, stop or detention, the person:

1. Resists the arrest, stop or detention of such person by. . .fleeing from such officer;. . .

3. A person is presumed to be fleeing a vehicle stop if that person continues to operate a motor vehicle after that person has seen or should have seen clearly visible emergency lights or has heard or should have heard an audible signal emanating from the law enforcement vehicle pursuing that person. . .

5. . . .Resisting an arrest, detention or stop by **fleeing in such a manner that the person fleeing creates a substantial risk of serious physical injury or death to any person** is a class D felony; otherwise, resisting or interfering with an arrest, detention or stop in violation of subdivision (1) or (2) of subsection 1 of this section is a class A misdemeanor.

§575.150, RSMo. (Emphasis added). The applicable Missouri statute identifies varying degrees of resisting arrest that equate to varying degrees of criminality, from a misdemeanor up to a class D felony. The category of crime committed by Campbell is the most serious within the statute in that an element of the offense is the creation of a substantial risk of serious physical injury or death to another person.

Campbell's crime of Resisting a Lawful Stop in violation of §575.150.5, RSMo., posed a "serious potential risk of physical injury to another." As previously stated, Campbell's Resisting a Lawful Stop conviction involved the following conduct:

on or about March 4, 2006. . .Ptlm. Wiedner, a law enforcement officer, was attempting to make a lawful stop of a vehicle being operated by [Campbell], and [Campbell] knew or reasonably should have known that the officer was making a lawful stop, and, for the purpose of preventing the officer from effecting the stop, resisted the stop of [Campbell] by fleeing from the officer and [Campbell] fled in such a manner that created a substantial risk of serious physical injury or death to other persons in that [Campbell] failed to stop at

-17-

numerous stop signs, struck a patrol car that was occupied by a police officer
and by driving completely off the roadway numerous times.

Government Exhibit #2.

The Eleventh Circuit recently examined a Florida statute that was very similar to the

Minnesota statute in *Tyler* and concluded that Florida's "willful fleeing" statute did not

constitute a crime of violence after *Begay* and *United States v. Chambers*, 473 U.129 S.Ct. 687

(2009) (wherein the Supreme Court concluded that a felon's failure to report is not a crime of

violence) were decided. *United States v. Harrison*, 558 F.3d 1280 (11th Cir. 2009). The

*Harrison* Court concluded that "disobeying a police officers signal and continuing to drive on,

without high speed or reckless conduct is not sufficiently violent enough to be" considered a

"crime of violence." *Harrison*, 558 F.3d at 1296. The *Harrison* Court stated, however, that:

> our conclusion would be different were the statute to criminalize conduct that,
> in the ordinary case, involves an offender stepping on the gas and driving away
> recklessly without regard for the safety of others. Such callousness and
> indifference to the lives of others smack more of the kind of person that might
> "deliberately point the gun and pull the trigger."

*Harrison*, 558 F.3d at 1298. Campbell's conduct of "fle[]eing] in such a manner that created a

substantial risk of serious physical injury or death to other persons. . .[by] fail[ing] to stop at

numerous stop signs, str[i]k[ing] a patrol car that was occupied by a police officer and by driving

completely off the roadway numerous times," is exactly the type of conduct required to make

Resisting a Lawful Stop a "crime of violence," even after *Begay* and *Chambers*.

In regard to Campbell's two points, the record of the case and applicable law conclusively

show that his counsel did not: (1) so grievously err as to not function as the counsel guaranteed

by the Sixth Amendment; and (2) provide a deficient performance that prejudiced Campbell's

-18-

defense. *Auman v. United States*, 67 F.3d 157, 162 (8th Cir. 1995) citing *Strickland*, 466 U.S. at 687.

C.

There is nothing in the record to support Campbell's claim that his counsel was ineffective. Campbell's claims regarding his counsel's alleged grievous errors and deficient performance have been refuted by the record and applicable law. Campbell's counsel spoke at length in support of a sentence below the advisory sentencing guidelines range at the sentencing hearing. Campbell faced a sentencing range of between 188 to 235 months based on the concessions made by the Government, rather than the 262 to 327 months he could have faced. The performance by Campbell's counsel was in part responsible for the Government's concession of not filing the prior, which resulted in Campbell's final sentence of 188 months. Campbell never expressed any dissatisfaction with counsel during court proceedings. Additionally, the Plea Agreement provided that Campbell was satisfied with counsel. (Government Exhibit #1/Plea Agreement, ¶8) The record before this Court supports that Campbell's counsel was effective.

It is important to note that as a condition of the written Plea Agreement that Campbell entered into in this case, Campbell agreed to waive his right to challenge the conviction or sentence in any post trial proceeding, including one under §2255. The Plea Agreement provided:

> The defendant acknowledges being guilty of the crime to which a plea is being entered, and further states that neither defense counsel nor the government have made representations which are not included in this document as to the sentence to be imposed. The defendant is fully satisfied with the representation received from counsel, Michael A. Skrien, with whom he has discussed the Government's case, possible defenses and defense witnesses, and that Mr. Skrien has completely and satisfactorily explored all areas which the defendant has requested relative to

the Government's case and the defendant's defense, and in light of this and in the event the Court accepts this plea agreement, **the defendant further agrees to waive all rights to contest the conviction or sentence, except for grounds for prosecutorial misconduct or ineffective assistance of counsel at the time of sentencing, in any post-conviction proceeding, including, but not limited to, a motion brought under 28 U.S.C. §§2241, 2255,** and Rule 60(b) Fed. R. Civ. P. or by means of any other petition for relief of any description.

(Plea Stip ¶ 2C(2)) (emphasis added).

Negotiated waivers of appellate rights and rights to pursue post-conviction relief have been routinely upheld by the Eighth Circuit. *See*, *United States v. Rutan,* 956 F.2d 827, 829 (8th Cir. 1992) (waiver of the right to appeal a sentence contained in a plea agreement is enforceable)*; United States v. His Law*, 85 F.3d 379 (8th Cir. 1996). In *DeRoo v. United States*, 223 F.3d 919 (8th Cir. 2000), DeRoo pleaded guilty pursuant to the terms of a plea agreement providing that DeRoo waived any right to appeal the judgment and sentence and a waiver of all rights to contest his conviction or sentence in any post-conviction proceeding pursuant to 28 U.S.C. §2255. After being sentenced, however, DeRoo filed a motion under 28 U.S.C. §2255 to vacate, set aside, or correct his sentence, claiming that he had been denied effective assistance of counsel on various grounds. In addressing the Government's claim that DeRoo had waived his right to file a motion for post-conviction relief under §2255, the Eighth Circuit noted that, "As a general rule, we see no reason to distinguish the enforceability of a waiver of direct-appeal rights from a waiver of collateral-attack rights in the plea agreement context." *Id*. at 923.

The chief virtues of a plea agreement of speed, economy, and finality "are promoted by waivers of collateral appeal rights as much as by waivers of direct appeal rights. Waivers preserve the finality of judgments and sentences, and are of value to the accused to gain concessions from the government." *Id*. However, "the decision to be bound by the provisions of

-20-

the plea agreement, including the waiver provisions, must be knowing and voluntary." *Id.*, citing

*United States v. Morrison*, 171 F.3d 567, 568 (8th Cir. 1999).

The Eighth Circuit has determined that a waiver of a right to appeal is enforceable (1) if

knowingly and voluntarily made, and (2) if the sentence imposed is in accordance with the

negotiated agreement. *Rutan*, 956 F.2d at 829. To be effective, Movant need not know with

certainty what his sentence might be at the time of the waiver. *Id.* at 830. ("While Rutan might

not have known the exact dimension of the sentence, he knew he had a right to appeal his

sentence and that he was giving up that right.")

Campbell affirmed that he knowingly and voluntarily entered into the Plea Agreement

within the document itself:

> The defendant acknowledges that the defendant has voluntarily entered into both
> this plea and these agreements, recommendations and stipulations. The defendant
> further acknowledges that this guilty plea is made of the defendant's own free will
> because the defendant is, in fact, guilty of the conduct specified in sections four
> and five above.

(Plea Stip, ¶ 11) Campbell does not claim in his §2255 Motion that his plea was unknowingly,

or involuntarily entered into, thus this Court should find that he has waived the right to pursue

this issue as a part of his §2255 Motion.

Nor, would an issue of this type be normally cognizable in a §2255 Motion. In regard to

Campbell's complaint regarding the fact he was found to be a career offender, Sentencing

Guideline arguments do not fall under the §2255 provision for sentences in "excess of the

maximum authorized by law and should therefore be brought only on direct appeal." *United*

*States v. Wilson*, 997 F.2d at 431. As such, Campbell cannot raise issues regarding Sentencing

Guideline errors not raised upon direct appeal, unless he can show both cause for failure to raise

the issue on direct appeal and actual prejudice resulting from the failure. *Dyer v. United States*, 23 F.3d 1379 (8th Cir. 1994); *Thompson*, 7 F.3d at 1379; *Peltier v. Henman*, 997 F.2d 461 (8th Cir. 1993). Campbell cannot make this showing as his complaint about being classified as a career offender was addressed during the sentencing hearing (Sent. Tr. 5-8), this Court found against him, and he failed to file an appeal.

Based on the aforementioned information, Campbell's counsel's performance has not been shown to be deficient in any respect.

In addition, the review of the record in this case, as well as the applicable law supports that Campbell's counsel effectively represented his interests. As noted in *Rogers v. United States*, 1 F.3d 697, 699 (8th Cir. 1993), when all the information necessary for the court to make a decision with regard to claims raised in a §2255 motion is included in the record, there is no need for an evidentiary hearing. An evidentiary hearing is unnecessary where the files and records conclusively show petitioner is not entitled to relief. *United States v. Schmitz*, 887 F.2d 843, 844 (8th Cir. 1989); *Dall v. United States*, 957 F.2d 571, 573 (8th Cir. 1992).

IV.

For the foregoing reasons, Campbell's § 2255 motion is **DENIED**.

**SO ORDERED** this 27th day of October, 2011.

STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE